UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANN M. ZWICK,

                                        Plaintiff,

                                                          Case # 17-CV-727-FPG

v.

                                                          DECISION AND ORDER

TOWN OF CHEEKTOWAGA, et al.,

                                        Defendants.

## INTRODUCTION

Plaintiff Ann M. Zwick brings this civil rights action against three defendants—the Town of Cheektowaga ("the Town"), Christopher Wierzbowski, and Mark Cyrek—who, she claims, maliciously prosecuted two charges against her.  *See* ECF No. 1.  Zwick now moves for partial summary judgment as to liability on all claims.  ECF No. 46.  Defendants oppose the motion, ECF Nos. 53, 54, and Zwick has filed her reply.  ECF No. 58.  For the reasons that follow, Zwick's motion is DENIED.  Furthermore, the Court intends to *sua sponte* grant summary judgment against Zwick on her first and second claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable

1

to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

The following facts are taken from the record. On June 24, 2016, Cyrek filed a complaint against Zwick with the Town's police department. ECF No. 46-5 ¶ 1. Officer Wierzbowski, a police officer with the Town, interviewed Cyrek and wrote as follows in the report:

> [Cyrek] stated that [Zwick] will not stop calling, texting his phone no matter how many times he blocks her number. [Cyrek] also states that [Zwick] drives by his house numerous times and also stopped in his driveway tonight just after he got home from work. [Cyrek] also states that the [sic] gets a lot of emails from [Zwick] as well and can't stand being stalked. . . . [Cyrek] also states that [Zwick] has told him that she will get him to lose his job over this. [Cyrek] wants to press charges against [Zwick] and doesn't want to be held hostage in his own house any more.

ECF No. 46-4 at 2. The report noted that Cyrek was "upset," that Zwick was "violently and constantly jealous of [Cyrek]," and that "physical violence [had] increased in frequency or severity over the past 6 months." *Id.* at 2, 3. In a supporting deposition attached to the report, Cyrek averred that Zwick had called, texted, and emailed him after he had "blocked her numbers." *Id.* at 3. Furthermore, she had "once again driven down [his] street for no legitimate purpose, except to see if [he] was there." *Id.* That evening, Zwick had pulled into Cyrek's driveway and "kept asking [him] why [he'd] lie." *Id.* Cyrek stated, "I wish to have her stop these actions & have no choice but to press charges." *Id.*

Officer Wierzbowski filed a criminal complaint alleging that Zwick had committed fourth-degree stalking, in violation of New York Penal Law § 120.45(3). *Id.* at 7. That provision reads: "A person is guilty of stalking in the fourth degree when he or she intentionally, and for no

legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct . . . is likely to cause such person to reasonably fear that his or her employment, business or career is threatened, where such conduct consists of appearing, telephoning or initiating communication or contact at such person's place of employment or business, and the actor was previously clearly informed to cease that conduct." N.Y. Penal Law § 120.45(3). In the criminal complaint, Officer Wierzbowski wrote that "on 6/24/16 at approx. 2330 hrs [Zwick] continuously drove around the street and stopped into [Cyrek's] driveway. The defendant has also made numerous attempts to contact the victim via emails, text messages and phone calls from different phone numbers. The victim states that this has been going on for at least the last couple of weeks. The defendant has also made numerous threats against the victim telling him she will get him to lose his job over this." ECF No. 46-4 at 7.

On July 3, 2016, Town Justice Paul S. Piotrowski issued an arrest warrant on the basis of Officer Wierzbowski's criminal complaint. *Id.* at 267. Zwick states that she did not learn about the arrest warrant until one month later. ECF No. 46-3 ¶ 18. On August 1, 2016, Zwick's attorney sent a letter to Town Justice Piotrowski. *See* ECF No. 46-4 at 269. Counsel requested that the warrant be withdraw, arguing that the criminal complaint was defective insofar as it failed to allege that Cyrek had been "contacted at his place of business or that he warned [Zwick] not to do so." *Id.* On August 2, 2016, Zwick appeared before Town Justice Piotrowski for her arraignment. ECF No. 46-3 ¶ 19. Zwick avers that "Judge Piotrowski dismissed the charge at [her] arraignment, agreeing that the accusatory instruments were legally insufficient to support the stalking charge." *Id.* Zwick's certificate of disposition confirms that the charge was dismissed on August 2, 2016, though it does not state the basis for the dismissal. ECF No. 46-4 at 271.

On August 4, 2016, Officer Wierzbowski filled out another report related to the incident on June 24, 2016. *Id.* at 4-5. Officer Wierzbowski's narrative of the incident is largely identical to his previous report, except that he added the additional fact that Cyrek had "advised [Zwick] numerous times to not contact him anymore." *Id.* at 4. Cyrek also included more details in his supporting deposition, alleging, among other things, that Zwick had "called and text[ed] numerous times after being told not to," "stopped @ the house approx. 4 times uninvited," and made "threats to [him] that she will contact IAD and get [him] fired." *Id.* at 5. Officer Wierzbowski filed another criminal complaint, alleging that Zwick had committed fourth-degree stalking in violation of subsection two—rather than three—of Section 120.45. ECF No. 46-4 at 9. Subsection two reads: "A person is guilty of stalking in the fourth degree when he or she intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct . . . causes material harm to the mental or emotional health of such person, where such conduct consists of following, telephoning or initiating communication or contact with such person, . . . and the actor was previously clearly informed to cease that conduct." N.Y. Penal Law § 120.45(2).

On August 16, 2016, Zwick was arrested on the charge. ECF No. 46-3 ¶ 21. She was held overnight and released after her arraignment the next day. *Id.* ¶ 23. Zwick states that she attended between six and eight court appearances before the charge was dismissed. ECF No. 46-4 at 221. The disposition resulted from her attorney's December 23, 2016 motion to dismiss the complaint due to the legal insufficiency of the accusatory instrument. *Id.* at 288-91. Town Justice Piotrowski agreed, concluding that the complaint and supporting documents were legally insufficient to establish that Zwick's communications "intended to and actually materially harm[ed] the mental or emotional health of another." *Id.* at 299.

4

On July 31, 2017, Zwick filed the present action.  ECF No. 1.  She raises four claims: (1) a claim under 42 U.S.C. § 1983 against Officer Wierzbowski for malicious prosecution related to the June 2016 charge; (2) a common-law malicious prosecution claim against Cyrek related to the June 2016 charge; (3) a § 1983 claim against Officer Wierzbowski for malicious prosecution related to the August 2016 charge; and (4) a common-law malicious prosecution claim against all defendants related to the August 2016 charge.[1]  *Id.* at 8-11.

## DISCUSSION

Zwick moves for partial summary judgment as to liability on all claims.  The Court addresses each charge separately.

### I.    June 2016 Charge

As to the claims arising from her June 2016 stalking charge, the Court is inclined to *sua sponte* grant summary judgment against Zwick.

To prevail on a malicious prosecution claim under New York law or § 1983, "a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice."  *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (internal quotation marks omitted).  The second element, favorable termination, "is designed principally to ensure against inconsistent judgments and to avoid parallel litigation as to questions of probable cause."  *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) (internal citation omitted).  The plaintiff bears the burden of proving that the charge

---

[1] In her motion, Zwick additionally claims that she is bringing her first claim against Cyrek, her second claim against Wierzbowski and the Town, and her third claim against Cyrek.  *See* ECF No. 46-6 at 21.  But the complaint clearly delineates which claims apply to which defendants, as set forth above.  *See* ECF No. 1 at 8-11.  To the extent Zwick wishes to amend her complaint, she must do so in accordance with the Local Rules.  *See* Loc. R. Civ. P. 15.

"terminated favorably." *Culberth v. Town of East Hampton, N.Y.*, No. 18-CV-4796, 2020 WL 4587731, at *3 (E.D.N.Y. Feb. 21, 2020); *see also Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (affirming dismissal of malicious prosecution claim where plaintiff alleged that the charges against him "were dismissed . . . without specifying how or on what grounds"). New York law and federal law diverge on the showing required to satisfy the "favorable termination" element. *See Kee*, 12 F.4th at 163.

For purposes of a § 1983 claim, a termination is "favorable" only when "its final disposition is such as to indicate the innocence of the accused." *Id.* at 163 (quoting *Murphy*, 118 F.3d at 948). "The answer to whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Murphy*, 118 F.3d at 948 (internal quotation marks and brackets omitted). In *Murphy*, the Second Circuit noted that, because it does not "result from [an] adjudication of the merits," a dismissal "for failure to allege sufficient facts to support the charge" is not "sufficiently favorable to the accused to be indicative of innocence." *Id.* A dismissal for facial insufficiency "may not end the state's pursuit of the accused on the same charges, for a renewed prosecution may be commenced in a proper court on a facially sufficient pleading." *Id.* at 949. The Second Circuit has repeatedly upheld this view. *See Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) (summary order) ("Dismissals of criminal proceedings for facial insufficiency are not sufficiently favorable to the accused to be indicative of innocence" (internal quotation marks omitted)); *Laboy v. Cty. of Ontario*, 668 F. App'x 391, 393 (2d Cir. 2016) (summary order); *Russell v. The Journal News*, 672 F. App'x 76, 78 (2d Cir. 2016) (summary order).

By contrast, New York law provides that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001); *see also Lanning*, 908 F.3d at 27-28 (discussing New York law). Even under New York law, however, "a dismissal without prejudice for facial insufficiency is not a final favorable termination" for purposes of a malicious prosecution claim. *Russell*, 672 F. App'x at 79. This is because, insofar as the dismissal is without prejudice, it is "not final." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000); *see also McGee v. Doe*, 568 F. App'x 32, 39-40 (2d Cir. 2014) (summary order); *Semmig v. Charlack*, 39 N.Y.S.3d 72, 74 (2d Dep't 2016).

In this case, there is insufficient evidence that Zwick's June 2016 charge terminated in her favor. The record discloses that on August 2, 2016, Town Justice Piotrowski dismissed the June 2016 stalking charge. ECF No. 46-4 at 271. The record does not reveal the exact grounds of his decision; Zwick claims that he dismissed the charge because he agreed "that the accusatory instruments were legally insufficient to support the stalking charge." ECF No. 46-3 ¶ 19. Assuming that to be true, Zwick does not cite any evidence that suggests that the dismissal was "with prejudice" or otherwise barred reprosecution of the offense. As a general matter, the dismissal of a legally insufficient misdemeanor complaint does not bar "further prosecution of the charges so dismissed." *People v. Epakchi*, 37 N.Y.3d 39, 46 (2021) (discussing Criminal Procedure Law § 170.30(1)(a)). Indeed, there is evidence that Zwick's attorney and the prosecutor were both under the impression that charges would or could be refiled.[2] *See* ECF No. 46-4 at 274.

---

[2] A comparison of the disposition certificates for Zwick's two charges also suggests that the June 2016 charge was not dismissed with prejudice. The certificate for the June 2016 charge identifies the disposition as "Dismissed," while the certificate for the August 2016 charge identifies the disposition as "DISM WITH PREJUDICE." *Compare* ECF No. 46-4 at 271, *with id.* at 296.

Thus, if anything, the available evidence indicates that the June 2016 charge was dismissed without prejudice due to the legal insufficiency of the accusatory instrument.  Under state and federal law, that disposition does not constitute a favorable termination, *accord Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686, 2014 WL 1010408, at *10 (E.D.N.Y. Mar. 17, 2014) (collecting cases); *see also McGee*, 568 F. App'x at 39-40, and Zwick bears the burden of proving otherwise.

Under these circumstances, the Court is inclined to grant summary judgment against Zwick on the claims related to the June 2016 charge.[3]  Although none of the defendants has moved for summary judgment, this Court has the discretion to *sua sponte* "grant summary judgment for a nonmovant" so long as it gives "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1). With this Order, the Court hereby gives Zwick notice that it intends to grant summary judgment against her on the state and federal malicious prosecution claims related to the June 2016 charge. By November 9, 2021, Zwick may file a response to the Court's order to the extent she disagrees with the factual or legal underpinnings of the Court's conclusion.  By November 16, 2021, Defendants may file a reply to Zwick's response.

## II.    **August 2016 Charge**

As for the claims related to the August 2016 charge, summary judgment is inappropriate because there is a genuine issue of material fact as to whether Cyrek and Wierzbowski were motivated by actual malice.

To prove a claim for malicious prosecution, whether it arises under state or federal law, the plaintiff must show "actual malice as a motivation for [the] defendant's actions."  *Harrison v. Cty.*

---

[3] Assuming that Zwick can demonstrate a favorable termination for purposes of her claims related to the June 2016 charge, the Court will nevertheless deny summary judgment as to those claims.  As stated in Section II, *infra*, there is a genuine issue of material fact as to actual malice.

*of Nassau*, 804 F. App'x 24, 28 (2d Cir. 2020) (summary order).  Actual malice refers to "a wrong or improper motive, something other than a desire to see the ends of justice served."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996); *see also Restatement (First) of Torts* § 668 cmt. e (1938) ("The only proper purpose for which criminal proceedings can be instituted is that of bringing an offender to justice and thereby aiding in the enforcement of the criminal law.").  Malice may be inferred from the lack of probable cause, but it is not dispositive.  *See Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977) ("[A] jury may, but is not required to, infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.").

Viewing the facts in the light most favorable to Cyrek and Officer Wierzbowski, the Court concludes that there is a genuine issue of material fact that precludes summary judgment in Zwick's favor.  Zwick and Cyrek had been in a long-term romantic relationship, and there are allegations of misconduct—violence, threats, child abuse and neglect, adultery, public drunkenness—on both sides.  *See, e.g.*, ECF No. 46-4 at 161-62, 164; ECF No. 53-2 ¶ 25.  At some point, the pair broke up; Zwick identifies February 2015 as the date when their relationship ended.  ECF No. 46-4 at 185.

Thereafter, Zwick admits that Cyrek "stopped responding" to her communications, and that she continued to call and text him.  ECF No. 46-3 ¶ 4.  In the months preceding June 2016, Zwick sent hundreds of text messages to Cyrek.  *See* ECF No. 53-1.  In these messages—to which Cyrek rarely responded—Zwick professed her continuing love for Cyrek.  *Id.* at 18, 22, 26, 28, 66.  She repeatedly indicated that their breakup had driven her towards suicide,[4] and she implied that

---

[4] In one message, Zwick sent a photograph of a knife with the caption "Good bye.  I did really love u and meant that you were my life my forever.  I'll be by the water."  ECF No. 53-1 at 15.  Twenty minutes later, Zwick sent a text message saying that she "will be forever unreachable within 5 minutes."  *Id.*  In mid-March 2016, Zwick informed Cyrek that she was "going in for surgery" and wrote, "My hope is I never wake up from surgery.  That would make things super easy for me."  *Id.* at 31.  Other text messages convey a similar point: "U win, Goodbye Mark!  Remember always I loved you more than life itself!"; "[U]nless I

she would contact the internal affairs division—Cyrek was a police officer with the City of Buffalo at the time—to reveal workplace misconduct in which Cyrek had allegedly engaged.[5]   Cyrek alleges that Zwick also drove by his house a number of times for no "legitimate purpose."  ECF No. 46-4 at 3; *see also* ECF No. 53-2 ¶ 18.  Officer Wierzbowski recounted that Cyrek informed him Zwick "would often sit in her vehicle, with the lights out, a couple of doors down [from his home]."  ECF No. 54-1 ¶ 7.  Cyrek claims that he repeatedly asked Zwick to desist from contacting him or coming to his home, to no avail.  ECF No. 53-2 ¶¶ 7, 10, 18, 19.

Zwick's text messages and other conduct is of the sort that could reasonably cause emotional or mental harm to the recipient.  *Cf. Gutierrez v. Estrada*, No. 1-12-1355, 2013 WL 416211, at *1-2, 4 (Ill. App. Ct. Jan. 31, 2013) (for purposes of issuing a protective order, evidence established that respondent caused emotional distress to petitioner, where, *inter alia*, respondent "repeatedly called and texted [petitioner] and threatened suicide," followed her by car on one occasion, and threatened to post "naked photographs of her" at her workplace); *Hogue v. Hogue*, 224 Cal. Rptr. 3d 651, 654, 656 (Ct. App. 2017) (ex-husband's video message to ex-wife, wherein he "pretended to shoot himself in the mouth with his shotgun," is "indisputably conduct that would

---

hear from you you will not hear from me anymore"; "If you are with the RICAN please tell me.  If u don't I will KILL MYSELF!!!!!"; "Death is now here.  Goodbye my one and only true love!"; "It's time, goodbye my true love & soulmate.  Maybe we will meet again someday";  "I give up baby u win.  Do not attend when time comes.  Goodbye I guess forever"; "I've lost everything I have nothing left so this will be your last message or sign of me It's time"; "Isn't it scary knowing that any time could be the last time you talk to someone?  Keep that in mind."  *Id.* at 37, 38, 40, 42, 50, 52, 53, 57, 73, 87, 90.

[5] *See* ECF No. 53-1 at 75 ("YES I WILL BE CALLING IAD . . . . Fall off ur fucking bike and fake am [sic] on duty injury.  You can't have to [sic] decency to talk to me I will do what I need to do. . . . You can meet to talk or I will be calling tomorrow morning to meet them."); *id.* at 83 ("U checking with IAD today"); *id.* at 84 ("Goodbye Mark and remember whatever happens its because I do sincerely love you and u hurt me really bad in so many ways.  The truth is the truth."); *id.* at 86 ("I'm telling you NOT THREATENING YOU You need to talk to me civally [sic] or the city will be notified of ur true injury [] the fraudulent one."); *id.* at 100 ("You need to call me I am about to make a very huge decision and would like to talk.  If you decline it will be a very bad decision on ur part.  I am not threatening or being mean but I lost everything because of you.").

disturb plaintiff's peace of mind . . . and be the basis for granting a restraining order").  A jury could reasonably conclude that Zwick's actions had that effect: Cyrek avers that he found the communications "extremely disturbing" and "harassing."  ECF No. 53-2 ¶¶ 10, 13.  He told Officer Wierzbowski that he could not "stand being stalked" and felt that he was being "held hostage."  ECF No. 46-4 at 2.  Officer Wierzbowski observed in his initial incident report that Cyrek was "upset."  *Id.*  That Zwick continued to press forward with this course of conduct despite Cyrek's insistence that she stop reinforces the inference that she had no legitimate purpose for her actions "other than to hound, frighten, intimidate or threaten" him.  *People v. Stuart*, 100 N.Y.2d 412, 428 (2003).  Indeed, contrary to Zwick's claims that she engaged in her course of conduct solely to "have a conversation with him regarding the status of [their] relationship" and to retrieve some of her "personal property at his house," ECF No. 46-3 ¶¶ 4-5, her text messages expressly disclose a more nefarious motive.[6]

Based on Zwick's persistent course of conduct, a jury could reasonably conclude that by moving forward with the August 2016 charge, Cyrek and Officer Wierzbowski held not an improper motive, but a "desire to see the ends of justice served" based on what they perceived to be a violation of Penal Law § 120.45(2).  *Lowth*, 82 F.3d at 573.  There is evidence that Cyrek sought police intervention reluctantly, feeling he had "no choice but to press charges" given Zwick's conduct.  ECF No. 46-4 at 3; *see also Restatement*, *supra* § 668 cmt. f ("[T]he fact that [the accuser] was moved to action by his indignation at what he believed to be the criminal conduct of the accused does not negative the existence of a proper purpose [for the prosecution].").  And

---

[6] *See* ECF No. 53-1 at 86 ("I have no problem hurting you if u have no problem hurting me."); *id.* at 84 ("[U] hurt me really bad in so many ways. . . .  You won't have empathy and put urself in my shoes you left me no other option than to put u in my shoes."); *id.* at 78 ("You fuck me and can't talk to me.  I will fuck you and win."); *id.* at 79 ("It's time you see how it feels to be in my shoes."); *id.* at 75 ("You can't have to [sic] decency to talk to me I will do what I need to do.").

there is evidence that Officer Wierzbowski harbored no illegitimate reason for pursuing the case: he had no pre-existing relationship with Cyrek, became involved in the matter only because he was dispatched to respond to Cyrek's complaint, and filed the August 2016 charge as a ministerial duty at the request of the Erie County District Attorney's Office.   ECF No. 54-1 ¶¶ 3, 4, 14. Moreover, Zwick's alleged conduct fits broadly within the aim of the statute.  *See Stuart*, 100 N.Y.2d at 427 ("[T]he law [] properly reach[es] those delusional stalkers who believe either that their victims are in love with them or that they can win their victims' love by pursuing them." (internal quotation marks omitted)).   Even if the Court were to agree with Zwick that probable cause for the August 2016 charge was ultimately lacking, that alone does not mandate the conclusion that Cyrek or Officer Wierzbowski acted with actual malice.  *See Ricciuti v. N.Y.C. Transit Auth.*, 70 F. Supp. 2d 300, 323 (S.D.N.Y. 1999) ("[A] jury is free, on the basis of a defendant's explanations for his actions or other evidence in the case, to find a lack of malice, notwithstanding a lack of probable cause.").

To be sure, Zwick offers a different explanation of the underlying circumstances and her course of conduct.  The Court's discussion herein should not be understood as a judgment on the credibility of any of the parties.  The Court merely concludes that a reasonable jury could find that Defendants lacked actual malice—which would thereby compel a verdict in their favor—and therefore summary judgment is inappropriate.[7]  *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . .  [T]here is no issue for

---

[7] Because Zwick is not entitled to summary judgment on this element, the Court need not discuss the remaining elements of her claims.  Furthermore, given the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party.").

## CONCLUSION

For the reasons discussed above, Zwick's motion for partial summary judgment (ECF No.

46) is DENIED.  Furthermore, the Court intends to *sua sponte* grant summary judgment against

Zwick on her first and second claims pursuant to Federal Rule of Civil Procedure 56(f)(1).  By

November 9, 2021, Zwick may file a response or, if she does not intend to challenge the Court's

conclusion, a letter indicating such.  By November 16, 2021, Defendants may file a reply.

IT IS SO ORDERED.

Dated: October 20, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York